## Henry Blair v. William Blair.

### Gen. No. 4,619.

1. CROSS-EXAMINATION—*what proper upon.* Upon cross-examination it is proper to inquire of a witness if she had any feeling against the party against whom she is testifying.

2. IMPUTATION—*right of party to rebut.* Where a witness upon cross-examination has testified that she has feeling toward the party against whom she is testifying and that she could not well be without feeling because of the way she had been treated by him, it is competent to rebut such imputation by parol testimony.

3. NEW TRIAL—*when should not be granted for surprise.* A new trial should not be granted on the ground of surprise at the trial where the party claiming such surprise had opportunity to forestall it.

Action of assumpsit. Appeal from the County Court of Livingston County; the Hon. C. F. H. CARITHERS, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed March 10, 1906.

A. C. NORTON and R. B. CAMPBELL, for appellant.

C. C. and L. F. STRAWN, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellee sued his brother, the appellant, and filed a declaration containing only the common counts. With this he filed, besides a formal account, a copy of a note for $400, dated November 10, 1896, due one year after date, signed by appellant and payable to appellee. Appellant filed a sworn plea denying the execution of the note, the general

issue, and pleas setting up the five and ten years' Statutes of Limitation. Replications were filed, and appellee had a verdict and a judgment.

It is proved and not denied that appellant previously owed appellee $400 and gave this note on November 10, 1892, to evidence that debt, and that no part of it has been paid. Appellant claims it was dated 1892 and has since been changed to 1896 to avoid the ten years' Statute of Limitations. He also relies upon what he claims is an evident appearance of an alteration in the date of the note, a photographic copy of which has been certified to us, with a photographic enlargement of the date. On November 10, 1892, appellee had been visiting with his mother and his brothers, James and Henry, all of whom lived in the same house in this State, and he was to return that day to his home in Kansas. He proposed some adjustment of the debt Henry owed him. According to the testimony of appellee and James, Henry said he could not pay then nor all at once, but would pay $100 per year for four years. We think it a fair conclusion from all their testimony that it was agreed Henry should have that time in which to pay; and that to save appellee the necessity of coming back from Kansas in case Henry did not pay within the four years, Henry was to give this note, dated ahead to 1896, the end of the four years, so that appellee could have that to rely upon if the debt was not previously paid. Not all they testified harmonizes exactly with that theory, and they do not very closely explain why Henry was then to have another year's time; and it may be the arrangement was not very clearly understood. But it is agreed that Henry wrote the note, and if he got a year longer in which to pay than was really intended, it was his act. The note was on a printed form, and the figures "18" are printed. The figures "96" in the date are rather heavily and bunglingly made, and there are indications that a "2" was written and then changed to "6." But Henry may have first unconsciously written the real date, and then changed it to "6" to conform to the arrangement they were making. Appellee and James

testify that Henry started to write the note, and complained of the pen; that James then went to his room and brought a fountain pen; that Henry dipped it in ink and James told him not to dip it as it was already filled; and that Henry then wrote or finished writing the note.   He may have re-traced the date with this pen, liable to write an unnaturally broad and heavy stroke because unnecessarily dipped in ink. Appellee and James both testified positively that the note when introduced appeared exactly as when Henry wrote and delivered it, and that it had not been altered.   They also testified their mother was about the house but that they did not remember whether she was in the room.   Appellant, whose business is tending bar in a saloon, denied this testi-mony about the ink and the change of pens, and testified that he wrote the date 1892, and so delivered it, and that James was not at home that day.   The mother testified that James was not at home that day; that she knew a $400 note was given, but that she did not hear the conversation and did not know what the arrangement was.   Mrs. Blair was seventy-five years of age when she testified, was speaking of a matter which took place over twelve years before and which did not personally concern her, and she admitted she is not now on friendly terms with appellee.   This was the place where James lived; it was natural he should be at home the day his visiting brother was going to end his visit and start for Kansas; and neither appellant nor the mother tell where James was or give any reason for remembering that on a particular day twelve years before he was not at home.   We cannot say the jury and the trial judge ought to have reached a different conclusion from this proof.   It may be the note has been altered to avoid the Statute of Limitations, but that was a question of fact for the jury, and their verdict is in harmony with the apparent preponderance of the evi-dence.

It was proper to inquire of Mrs. Blair on cross-examina-tion whether she had any feeling against appellee, and when she replied that she thought any one would the way they had used her, appellee was not bound to rest under that im-

putation, but had a right to elicit from her that she referred to the fact that she had been placed under a conservator at the instance of certain of her children. It was not necessary to prove that fact by the record, for appellee was only requiring her to explain an ill-natured remark she had made which in fact referred to the conservatorship. She introduced the subject; and it was not original impeaching testimony by appellee, as appellant assumes. Mrs. Blair testified she did not pay much attention to what appellant and appellee said that day, that they talked low among themselves, and that she had testified to all she had heard them say; and it was not error to refuse to permit appellant to ask her, on redirect examination, if she could have heard all the conversation if she had cared to listen. An answer either yes or no would have been immaterial.

The jury were plainly instructed, at the request of appellant, that if the note sued on was given and dated on November 10, 1892, and the date afterwards changed to 1896 without the knowledge or consent of appellant, then the verdict should be for appellant; and other instructions given for appellant were to the like effect; and while one or two of the instructions given for appellee might have been improved in form, yet none of them were misleading or erroneous, and they did not conflict with those above mentioned given for appellant. We find no reversible error in the action of the court on the instructions.

On the motion for a new trial, appellant and his attorney filed affidavits that they were taken by surprise at the trial; that they did not suppose there would be any claim by appellee that the note was executed on any other date than November 10, 1896, and that they had prepared their defense solely with reference to that date. This suit was begun and tried in 1904. If they supposed the suit related to a note given in 1896, why did they plead the ten years' Statute of Limitations? Appellant's testimony shows he knew he had given appellee but one note, and that that was for $400 and was given November 10, 1892. The copy was dated 1896. He therefore knew (taking his testimony to be

issue, and pleas setting up 'the five and ten years' Statutes the truth as he·remembered it) either that the copy was an error and that at the trial the· date of the note would be found to be 1892, or else that the date of the note had been changed.   It seems obvious that he pleaded the ten years' statute to meet the note if it was dated 1892, and non-execution of the note to meet it if it was dated 1896.   Again, appellant could have obtained a complete disclosure of the cause of action by asking for a bill of particulars.   Further, it is not shown that appellant can produce any more proof at a new trial.   The motion for a new trial was made December 14, 1904.   The affidavits of appellant and his counsel were sworn to December 29, 1904, and January 10, 1905, and they state that if given a little time they hope to produce witnesses to testify where James was on November 10, 1892, and that he was not at home.   On February 17, 1905, the court continued the motion for a new trial, and it was heard on July 20, 1905.   The expected proof was not produced. It was shown that witnesses had heard James say he and appellee would do anything to beat appellant, and one witness was not sure but he had heard James say they would swear to anything to accomplish that result.   Other affiants spoke well of Mrs. Blair's mental powers.   It was also shown that her conservator. has since been discharged.   We find nothing in this requiring a new trial.

The judgment is therefore affirmed.

*Affirmed.*